## Case No. 15,569a.

### UNITED STATES v. LAVERTY et al.

[3 Mart. (O. S.) 733.]

District Court, D. Louisiana. 1812.

ALIEN INHABITANTS OF TERRITORY—ADMISSION AS STATE—CITIZENSHIP.

Inhabitants of the territory of Orleans became citizens of Louisiana and of the United States by the admission of Louisiana into the Union.

[See Boyd v. State of Nebraska, 143 U. S. 135, 12 Sup. Ct. 375.]

BY THE COURT. These persons have been arrested by a warrant, issued by me, on an affidavit made by the marshal, that he believes them to be alien enemies, who have neglected or refused to obey the notification of the government respecting them.

They deny that they are alien enemies, and insist that, as they were bona fide inhabitants of the territory of Orleans at the time of its admission into the Union, they became citizens of Louisiana, and consequently citizens of the United States. It is well known, that some of these persons have been discharged by one of the judges of the state; but as the marshal and many others are seriously impressed with a belief that they are not citizens, but aliens, it has been deemed proper to obtain the opinion of the judge of the United States.

It is contended by the attorney of the United States that congress alone have power to pass laws on the subject of the naturalization of foreigners, and that, by the constitution, it is declared that the rule for their admission must be uniform. On the other hand, it is said that congress have the power to admit new states into the Union; that this power is not inconsistent with nor repugnant to the other; that the first rule well applies where individual application is made for admission, but is not restrictive of the other power to admit at once great bodies of men, or new states, into the federal Union.

The power to admit new states, is expressly given by the third section of the fourth article of the constitution. It has been frequently exercised, and on the 30th of April, 1812, Louisiana was admitted into the Union, upon the same footing with the original states. In what manner has this power been exercised with respect to other states? On the 30th of April, 1802, the inhabitants of the eastern division of the territory northwest of the Ohio were authorised to form for themselves a constitution and state government. This was done, and they were afterwards admitted into the Union. Previous to their admission, the people of that country was governed by what is commonly termed the Ohio ordinance. That the population consisted partly of citizens of the United States and partly of foreigners, may be collected from the provisions of that instrument for their government. That a great body of aliens resided among them is known to many. It is declared, that possessing a freehold of fifty acres of land, having been a citizen of one of the states, and being resident in the district,—or the like freehold, and two years' residence,—shall be necessary to qualify a man as an elector. Here there are two descriptions of persons: (1) Citizens of the United States, with a freehold and actual residence; and (2) persons not citizens, with a freehold and two years' residence. Were they not all equally inhabitants? And, in the act of admission, is there any distinction made? The inhabitants, then, who were authorized to form a state government for themselves, must have been all the real inhabitants of the country; citizens or foreigners, and, after the admission of the state into the Union, must have

equally participated in all its advantages, because, if a party only were entitled to its benefit, all the inhabitants had not formed a government for themselves. Can we, for an instant, believe that a wise, just, and liberal government, like that of the United States, would invite any portion of people, who were enjoying self-government in a considerable degree, to place themselves in a situation where they would be entirely deprived of it? I can have no doubt that all the inhabitants of the state of Ohio were admitted citizens of that state by their admission into the Union.

Let us, then, examine and discover (if possible) any difference between the case of that state and of this. Louisiana, it is said, was admitted under the treaty of Paris, by which it is stipulated, that the inhabitants shall be incorporated into the Union of the United States, and admitted, as soon as possible, according to the principles of the federal constitution, to the enjoyment of all the rights, advantages, and immunities of citizens of the United States. It is, then, contended by some, that the word "inhabitants," used in the act of February, 1811, applies solely to those who were inhabitants in 1803. On the 11th of February, 1811, congress passed an act "enabling the people of the territory of Orleans to form a state government." It commences by declaring, that the "inhabitants" of all that part of the country ceded under the name of Louisiana, shall be authorized to form for themselves a state government. It then goes on, and describes two classes of inhabitants,—First, citizens of the United States, and all persons having in other respect the legal qualifications to vote for representatives in the general assembly. Those qualifications are the same as those of Ohio,—two years' residence and a freehold, for those who are not citizens. We here find no distinction between the old inhabitant and the new; the man who has been here two years, and has fifty acres of land, let him be citizen or alien, is authorized to join in making a constitution for all the inhabitants of Louisiana. The law, then, evidently does not mean merely "the inhabitants at the date of the treaty"; and it will be found that the only question in this case is, whether congress had a right to include any others than citizens in their act of admission. I have already shown that they have exercised this right heretofore; that, in the case of the state of Ohio, it was not disputed; and it does not become us, at this time, to question it.

I shall now consider some of the arguments that have been urged by the district attorney and his colleague. Although an attempt was made to distinguish between the two classes of inhabitants (not originally citizens of the United States), yet, in truth, their arguments go as well to exclude the first as the last class. It is contended, that the only mode by which an alien can be naturalized is by

a compliance with the uniform rule; that this is the only constitutional mode; that the expression in the treaty, that "the inhabitants shall be admitted according to the principles of the constitution," means, according to the uniform rule required by the constitution. If so, the Creoles of Louisiana are not citizens yet, for not one of them has complied with that law. But one of the gentlemen has observed, "Here is a treaty, and treaties are paramount." I can never subscribe to the doctrine, that treaties can do away any part of the constitution. I will go as far as any one in supporting and observing them in anything not repugnant to it. If, then, the uniform system be the only constitutional one, any other must be unconstitutional, and though introduced by treaty, is void. If this were the only constitutional mode, I should tremble for the fate of the Louisianians; but, fortunately for them and for others, it is not the only one. The expression under the treaty is, that they shall be admitted according to the principles of the constitution; that is, with the consent of congress, which shall be obtained as soon as possible; and it has been since given. By this construction. every part is reconciled; and if congress, in their liberality, included others who have since settled in the country, they had a right to do so.

It is said, that the law respecting alien enemies declares, that they shall all be apprehended, unless actually naturalized; and it is contended, that the only actual naturalization is by the uniform rule. This does not follow. If it did, there is scarcely a Creole who, in case of a war with France or Spain, would not be subject to its penalties. for none of them have complied with it. The government has a right, by treaty, or by the admission of a new state, to naturalize, and such naturalization is equal to the other. Let us suppose, what is honestly believed by many, that, although the form of government changed, yet the political character of individuals remained the same; let us ask, who would compose the state? For (as the learned gentleman at the bar observed) the state does not consist of land, water and trees. It is composed of men, women and children. Some say, "The old Louisianians, and the few citizens of the United States, who have settled since the treaty." "No," say others, "the old Louisianians have not been admitted according to the uniform rule, and they have nothing to do with it, and as to the new comers, not citizens, they are out of the question." The uniform rule would unquestionably place the original citizens of the United States in a more important situation. It would give them all the power of the country. But the government of the United States intended otherwise. They called upon the actual inhabitants of the country to form a government for themselves. They promised them. if they should not disapprove of it, that all of them should enjoy its advantages, and be members of it. Who those inhabitants were, will be a subject of strict inquiry. It has been observed, that it will be almost impossible to fix any certain rule on this subject, but it appears to me there will be no difficulty. An inhabitant is one whose domicile is here, and settled here, with an intention to become a citizen of the country. I conclude in agreeing with the judges of the late superior and state courts that by the several acts of congress, and the admission of the state of Louisiana into the Union, all the bona fide inhabitants became citizens of this state. Desbois' Case, 2 Mart. (La.) 285.

Prisoners discharged.

NOTE. In pursuance of this decision, a considerable number of persons, born in the dominions of the king of the United Kingdom of Great Britain and Ireland, who had resided in Louisiana, under the territorial government, *ceased to be considered by the marshal as British subjects, and as liable to the restrictions imposed on alien enemies.*